IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SELECTIVE INSURANCE                    *
COMPANY OF AMERICA
    40 Wantage Avenue                 *
    Branchville, NJ 07890
                                    *

         *Plaintiff,*                *

v.                                     *

JOHNNY D. MOSELEY                      *
    16503 Lone Oak Place
    Hamilton, VA 20158                *
    (Loudoun County)

and                                    *

ALISA MOSELEY                          *
    16503 Lone Oak Place
    Hamilton, VA 20158                *
    (Loudoun County)
                                      *

and                                    *

MOSELEY CONSTRUCTION                   *
GROUP, INC.
    13849 Park Center Rd., Suite A    *
    Herndon, VA 20171
                                      *

         *Defendants.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## VERIFIED COMPLAINT

      Plaintiff, Selective Insurance Company of America ("Selective"), by its undersigned attorneys and pursuant to the Federal Rules of Civil Procedure, files this Verified Complaint against the Defendants, Johnny D. Moseley ("Mr. Moseley"), Alisa Moseley ("Ms. Moseley"), and Moseley Construction Group, Inc. ("Moseley") (collectively referred to herein as the "Indemnitors"), and states:

### Parties, Jurisdiction and Venue

1.      Selective is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Branchville, New Jersey.

2.      Johnny D. Moseley and Alisa Moseley are individuals who reside at 16503 Lone Oak Place, Hamilton, Virginia, 20158.

3.      Moseley is a corporation organized and existing under the laws of Virginia, with its principal place of business in Herndon, Virginia.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as Moseley carries on a regular business in Washington, D.C., and a substantial part of the events giving rise to the claim occurred within this judicial district.

### Facts Applicable to All Counts

**The Construction Contracts and Surety Bonds**

6.      Moseley is a construction contractor.

7.      Moseley entered into a contract with 5th Street Partners, LLC ("5th Street Partners") for the construction of the District of Columbia's Short Term Family Housing Facility in Ward 4, located at 5505 5th Street NW, Washington, D.C. (the "Project").

8.      Selective issued payment and performance bonds at the request of Moseley, and in connection with the Project, including but not limited to those bonds numbered B 1200854 (the "Bonds").  True and accurate copies of the Bonds are attached hereto as Exhibit A.

9.      Moseley completed the Project in November of 2018.

**The Agreement of Indemnity**

10.    In partial consideration for Selective agreeing to issue the Bonds on behalf of Moseley, the Indemnitors executed a General Agreement of Indemnity in favor of Selective on or about March 20, 2018 (the "Indemnity Agreement"). A true and accurate copy of the Indemnity Agreement is attached hereto as Exhibit B.

11.    The Indemnity Agreement provides, among other things, that the Indemnitors shall indemnify and hold harmless Selective, as follows:

3. INDEMNITY; PAYMENTS; LOANS; EVIDENCE. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless Surety (and any surety that Surety procures to execute any Bond and any other surety with which Surety may act as co-surety on any Bond or other instrument) from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature, including, but not limited to, interest, court costs and counsel, attorneys, consulting, accounting and other professional and trade fees, whether incurred on a flat fee per claim, percentage, time and material, hourly or other basis, (including the cost of in-house professionals) which Surety may sustain, incur, be put to or to which it may be exposed (1) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this Agreement. The liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon at the rate of prime as published by the Wall Street Journal (or similar national financial publication should the Wall Street Journal cease to publish such rates) plus two points from the date of such payments, made by Surety under Surety's belief that (1) surety was or might be liable therefor or (2) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability. While the Surety shall be under no obligation to advance or loan money to any Indemnitor, the liability of the Indemnitors shall extend to any loans or advances, including any interest thereon, made or guaranteed by Surety for the benefit of one or more of the Indemnitors without any obligation on Surety's part to see the application thereof. Payment by reason of the aforesaid causes shall be made by the Indemnitors to the Surety at its Home Office in Branchville, New Jersey as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Indemnitors agree that the vouchers or other

3

evidence of such payments sworn to by a duly authorized representative of Surety shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety.

Exhibit B, ¶ 3.

12.     The Indemnity Agreement further provides Selective the right to demand the immediate posting of collateral as demanded by Selective:

4. DEMANDS FOR COLLATERAL.  If Surety or any reinsurer shall establish a reserve to cover any liability, claim asserted, suit, award or judgment in connection with any Bond, or any loss, cost, expense or fee in connection therewith, the Indemnitors, immediately upon demand (the "Collateral Demand"), whether or not Surety shall have made any payment therefor and whether or not the collateral demanded may be in addition to other collateral security previously provided to Surety, shall provide to Surety at its Home Office, funds and/or other collateral security, which Surety in its sole discretion deems adequate, equal in value to such reserve and any increase thereof as collateral security on such Bond. Such funds and any other property previously provided to Surety shall be deemed collateral security and shall be available to Surety for any indebtedness of the Indemnitors to Surety. Such collateral security shall be held subject to the terms of this Agreement.  If the Indemnitors fail to provide Surety with sufficient collateral after a Collateral Demand, they shall be in default of this agreement.  Indemnitors agree that their failure to provide collateral as demanded by Surety shall constitute irreparable harm to Surety for which it has no adequate remedy at law and that Surety may obtain injunctive relief compelling the delivery to Surety of sufficient collateral or in the alternative, Surety may obtain a judgment against each or any of the Indemnitors for the amount of the Collateral Demand plus the costs of obtaining the judgment, including its attorneys' fees by any legal or equitable process.  Any Collateral Demand reduced to a judgment may be immediately executed upon and any asset of an Indemnitor levied upon may either be held as collateral or liquidated in any manner deemed appropriate by Surety, including private or judicial sale. The proceeds of such liquidated assets may be held by Surety as collateral and applied to any of the Indemnitors' obligations to Surety arising under this Agreement or otherwise. (Emphasis added).

Exhibit B, ¶ 4.

13.     Finally of pertinence, the Indemnity Agreement provides that Selective "shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and Surety's decision thereon shall be final and binding upon the Indemnitors." Exhibit B, ¶ 7.

**The Bond Claims**

14.     Since Moseley completed the Project, numerous payment bond claims have been submitted to Selective by subcontractors, suppliers, labor contractors, and others (the "Claimants") against the Payment Bond totaling $2,007,341.70 as follows:

| Claimant | Amount Claimed |
|---|---|
| OMNI Excavators, Inc. | $85,277.01 |
| Foam InSEALators | $9,434.44 |
| Tradesmen International (1) | $18,789.21 |
| Tradesmen International (2) | $107,702.35 |
| First Choice Masonry | $364,778.54 |
| Rich Moe Enterprises | $277,033.64 |
| AMC Industries, Inc. | $136,042.71 |
| Innovo Construction, LLC | $169,693.79 |
| Hugee Corp. | $270,756.74 |
| Ecospaces | $152,887.20 |
| Duvall Paint | $73,887.10 |
| Gelberg Signs | $32,182.87 |
| Eastcoast Siding, Inc | $308,876.10 |
| TOTAL | $2,007,341.70 |

15.     Once the Surety received the claims, it conducted an independent investigation which included requesting additional information from both the Claimants and Moseley regarding the claims and the Project.

16.     During the course of Selective's investigation, Moseley has also acknowledged to Selective that Moseley's subcontractors and suppliers seek payment from Moseley in the amount of $2,683,000.

17.     Upon information and belief, Selective understands from Moseley that the Project Owner has not approved the vast majority of Moseley change orders and the difference between what is claimed by Moseley and what has been offered by the Owner amounts to more than $1.4 million.  Selective also understands that Moseley has insufficient funds to pay its subcontractors and suppliers.

18.     As a result of the numerous claims filed against the Payment Bond and Selective's subsequent investigation of those claims, Selective has posted a reserve in the amount of $1,699,993.00.

19.     As a further result of the claims and Selective's subsequent investigation of those claims, Selective is in the process of paying certain fully adjusted claims in an amount exceeding $28,000.00.  Selective has also incurred expenses consisting of $9,363.16 in attorneys' fees and consultant's fees, which are fully recoverable from the Indemnitors under the Indemnity Agreement.  With regard to two claims in particular, Selective has completed its investigation into those claims and has initiated the process for payment of $18,789.21 to Tradesmen International to resolve its claim, and a payment of $9,434.44 to Foam InSEALators to resolve that claim. Selective will continue to incur further such expenses which are recoverable from the Indemnitors under the Indemnity Agreement.  Selective's expenses going forward will include, but are not limited to, the attorneys' and accounting fees, and other costs incurred in connection with payment bond claims submitted and the costs of this action.  These losses and potential losses (and

expenses) are recoverable under the Indemnity Agreement and will continue to increase until paid by the Indemnitors, in connection with this action and otherwise.

20.     By letter dated April 2, 2019 and sent to the Indemnitors, and each of them, pursuant to the terms of the Indemnity Agreement, Selective demanded that the Indemnitors provide Selective with collateral in the amount of One Million, Six Hundred Eighty-Six Thousand, One Hundred Eighty-Five Dollars ($1,686,185.00), in the form of cash or a reasonable equivalent (the "Demand Letter").  The Indemnitors failed and refused to comply with this demand.  A true and accurate copy of the Demand Letter is attached hereto as Exhibit C.

21.     The failure and refusal of the Indemnitors to indemnify Selective and/or provide collateral as demanded constitutes a material breach of and default under the Indemnity Agreement.

### Count I
### Contractual Indemnity

22.     Selective incorporates by reference, as if fully stated herein, paragraphs 1 through 21 of this Verified Complaint.

23.     Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed, among other things, jointly, severally, and individually, to indemnify, hold harmless, and reimburse Selective for all losses, costs, and expenses, including but not limited to attorneys' and consultants' fees, incurred by Selective in any way related to Selective's issuance of the Bonds.

24.     Selective is at risk of having to make payments pursuant to its obligations under the Bonds, which the Indemnitors are obligated to immediately repay to Selective pursuant to the Indemnity Agreement.  The total net amount due to Selective as a result of such exposure is One Million Six Hundred Ninety-Nine Thousand Nine Hundred Ninety-Three Dollars ($1,699,993.00) as of the date of this Complaint.  These potential losses are recoverable under the Indemnity

7

Agreement and will continue to increase until paid by the Indemnitors, in connection with this action and otherwise.

25.     Selective has also incurred losses, costs, and expenses, including but not limited to attorneys' and consultants' fees, which are fully recoverable from the Indemnitors under the Indemnity Agreement.  Selective has continued and will continue to incur further such expenses which are recoverable from the Indemnitors under the Indemnity Agreement.  Selective's expenses going forward will include, but are not limited to, the attorneys' and accounting fees, and other costs incurred in connection with this action.  These losses and potential losses (and expenses) are recoverable under the Indemnity Agreement and will continue to increase until paid by the Indemnitors, in connection with this action and otherwise.

26.     Despite demand, and in material breach of and default under the Indemnity Agreement, the Indemnitors have failed and refused to indemnify Selective for incurred and anticipated losses, costs, and expenses, and they have failed to provide the collateral demanded by Selective to provide it security in connection with both incurred and anticipated losses.

## Count II
## Declaratory Judgment (Quia Timet)

27.     Selective incorporates by reference, as if fully stated herein, paragraphs 1 through 26 of this Verified Complaint.

28.     28 U.S.C.  § 2201(a) provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

29.     The Indemnitors are obligated under the doctrine of *quia timet* to post collateral security to Selective to secure and exonerate Selective from all claims, losses, and expenses that have either occurred or are feared to occur as a consequence of the Bonds issued by Selective.

30.     Selective has demanded, in accordance with the terms of the Indemnity Agreement, that the Indemnitors indemnify Selective and provide collateral security.

31.     The Indemnitors have not provided collateral security as demanded by Selective, and refuse to do so, such that an actual controversy exists between the Indemnitors and Selective.

32.     Selective has no adequate remedy at law for the protection to which it is entitled. Selective is reasonably in fear that the Indemnitors may have transferred assets and may transfer further assets in derogation of the legal and equitable rights of Selective.  If the Indemnitors are not enjoined immediately from transferring or encumbering their assets, the assets may be disposed of permanently, and the Indemnitors may render themselves insolvent, all to the prejudice of Selective. The Indemnitors should be preliminarily and permanently enjoined from transferring or encumbering assets, and ordered to post collateral with Selective sufficient to protect Selective's interests.

33.     As a result of the conduct of the Indemnitors, Selective has been and will continue to be damaged so long as the Indemnitors are able to circumvent their obligations to Selective under the Indemnity Agreement by encumbering or transferring their assets.

34.     Such assets include, but are not limited to, the following real property located in Virginia and owned by Mr. Moseley and Ms. Moseley: 16503 Lone Oak Place Hamilton, Virginia 20158; a 2013 SUV; and a 2014 370 Boston Whaler.

## Count III
## Specific Performance

35.     Berkley incorporates by reference, as if fully stated herein, paragraphs 1 through 34 of this Verified Complaint.

36.     The Indemnitors entered into the Indemnity Agreement in consideration for the issuance of the Bonds by Selective.  The Indemnity Agreement provides that the Indemnitors are required to hold harmless, indemnify, post collateral security and to issue prompt payment for the protection of Selective.

37.     Selective has demanded, in accordance with the Indemnity Agreement, that the Indemnitors indemnify Selective and provide collateral security.

38.     The Indemnitors have neither indemnified Selective nor provided the collateral security demanded by Selective.

39.     Selective's remedy at law is inadequate in that Selective is exposed to liability which is not liquidated at this time.  Specific performance enforcing the obligation to post collateral security is necessary.

WHEREFORE, Selective Insurance Company of America requests that this Court:

a.     Enter judgment in favor of Selective and against the Indemnitors, jointly and severally, in the amount of at least One Million, Six Hundred Ninety-Nine Thousand Nine Hundred Ninety-Three Dollars ($1,699,993.00), or as is otherwise demonstrated by Selective, plus interest, costs, and attorney's fees;

b.     Enter judgment in favor of Selective and against the Indemnitors, jointly and severally, obligating the Indemnitors to hold harmless, indemnify, and reimburse Selective for any and all losses it has sustained or will sustain in connection with the Bonds;

c.     Issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining the Indemnitors (and their agents, servants, employees, and all persons acting under, in concert with, or for them) from selling, transferring, disposing, pledging, encumbering, or licensing their assets and property unless and until the Indemnitors have posted sufficient collateral as described above;

d.     Enter a judgment, by specific performance and/or *quia timet*, against the Indemnitors to immediately post collateral security with Selective sufficient to protect Selective from all loss, and compelling Moseley to execute a letter irrevocably directing 5th Street Partners, LLC (or any related entity, including MED Developers, LLC), or the D.C. Department of General Services (or any entity within the D.C. government), to instead pay any and all sums otherwise due Moseley to Selective until such time as all of Selective's reserves, losses, and expenses have been fully collateralized and paid as demanded by the Surety;

e.     Enter a judgment awarding Selective all of its attorney's and consultant's fees and costs incurred in connection with this action; and

f.     Award such further relief to Selective as may be necessary or just given the circumstances.

Respectfully submitted,

*/s/ David D. Gilliss*
David D. Gilliss, Bar No. MD05174
Alexander B. Kahn, Bar No. 1032237
Pike & Gilliss, LLC
600 Washington Avenue, Suite 303
Towson, Maryland 21204
(443) 761-6500
(443) 761-6519 (fax)
gilliss@pikegilliss.com
akahn@pikegilliss.com
*Attorneys for Selective Insurance*
*Company of America*

11

**VERIFICATION**

I, Jonathan Panico, Senior Bond Claims Representative for Selective Insurance Company of America, solemnly affirm, under the penalties of perjury that the factual matters set forth in this Verified Complaint are true to the best of my knowledge, information, and belief.

_____

Jonathan Panico