**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

—————————————————————  )
                                                    )
**SELECTIVE INSURANCE COMPANY**                     )
**OF AMERICA,**                                     )
                                                    )
      **Plaintiff,**                             )
                                                    )
          **v.**                           )    **Case No. 19-cv-01054 (APM)**
                                                    )
**JOHNNY D. MOSELEY et al.,**                       )
                                                    )
      **Defendants.**                            )
—————————————————————  )

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Selective Insurance Company of America ("Selective") has moved for summary judgment on its breach of contract claim against Defendants Moseley Construction Group, Inc. ("MCG") and Johnny D. Moseley and Alisa Moseley, MCG's owners.

For the reasons that follow, the court grants in part and denies in part Selective's motion for summary judgment.

## II.   BACKGROUND

### A.   Factual Background

This case arises from a General Agreement of Indemnity ("Indemnity Agreement") pursuant to which Defendants agreed to indemnify Selective for any losses that Selective, as surety, sustained on a construction project.  MCG, a general contractor that typically works on commercial construction projects, entered a contract with 5th Street Partners, LLC to construct the District of Columbia's Short-Term Family Housing Facility in Ward 4.  *See* Pl.'s Mot. for Summ. J., ECF No. 51 [hereinafter Pl.'s Mot.], Pl.'s Stmt. of Material Facts in Supp. of Mot. for

Summ. J., ECF No. 51-2 [hereinafter Pl.'s Facts], ¶¶ 1, 14.  In partial consideration for Selective agreeing to issue a payment bond and a performance bond on behalf of MCG for the Ward 4 project, Defendants executed the Indemnity Agreement.  *See id.* ¶ 6.

The Indemnity Agreement provides that Selective has "the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and [its] decision thereon shall be final and binding upon the Indemnitors."  Verified Compl., ECF No. 1 [hereinafter Compl.], Ex. B, ECF No. 1-2 [hereinafter Indemnity Agreement], ¶ 7. It also provides:

> The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless Surety . . . from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature, . . . which Surety may sustain, incur, be put to or to which it may be exposed (1) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this Agreement or, (3) in enforcing any of the promises, covenants or conditions of this Agreement.

*Id.* ¶ 3.  Finally, the Indemnity Agreement provides that "vouchers or other evidence of such payments sworn to by a duly authorized representative of Surety shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety."  *Id.*

MCG completed the Ward 4 project in the fall of 2018.  *See* Pl.'s Facts ¶ 17.  After the project's completion, Selective received claims against the payment bond from numerous MCG subcontractors, suppliers, labor contractors, and others (collectively, the "Claimants").  *See id.* ¶ 18.  In response, Selective paid claims totaling $850,664.36.  *See id.* ¶ 26.  Specifically, Selective made the following payments to Claimants:

| Claimant | Amount Paid |
|---|---|
| AMC Industries, Inc. | $94,042.71 |
| Ecospaces, LLC | $152,887.20 |
| First Choice Masonry Inc. | $92,963.00 |
| Foam InSEALators of MD and VA | $9,434.44 |
| Hugee Corporation | $198,588.93 |
| Hugee Corporation | $13,773.52 |
| Tradesmen International LLC | $107,685.35 |
| Tradesmen International LLC | $18,789.21 |
| Rich Moe Enterprises, LLC | $62,500.00 |
| Eastcoast Siding, Inc. | $100,000.00 |

Defendants did not reimburse or indemnify Selective for these payments. *See id.* ¶ 27. Additional facts relevant to these payments are set forth below.

### 1. *AMC Industries, Inc.*

On or about January 25, 2019, AMC Industries, Inc. ("AMC") initiated a claim against the payment bond for $136,042.71 and subsequently submitted to Selective a Proof of Claim Affidavit under oath. *Id.* ¶ 28. Selective has introduced an affidavit from its claims representative, Jonathan Panico, stating that it "conducted a good faith investigation" into AMC's claim before making payment. *See id.*; Pl.'s Mot., Decl. of Jonathan Panico, ECF No. 51-4 [hereinafter Panico Decl.], ¶ 8. Panico does not, however, detail what steps Selective took as part of its investigation. *See* Panico Decl. ¶ 8.

MCG disputes whether Selective undertook a good-faith investigation, asserting that Selective failed to raise certain defenses to AMC's claim that MCG had identified. Specifically, MCG informed Selective that AMC was not entitled to payment because AMC "was a constant source of delay," submitted "numerous invoices that were unsupported and inflated," and "caused

3

significant damage to the Project's roof" that AMC was supposed to pay to repair.  Mosely Construction Group, Inc.'s Opp'n to Selective Insurance Company of America's Mot. for Summ. J., ECF No. 52 [hereinafter MCG Opp'n], Ex. 2, ECF No. 52-2 [hereinafter MCG's Ex. 2], at 4.[1]  Additionally, MCG asserted that Selective could not pay AMC without assurance that MCG was not liable for liquidated damages claimed by the D.C. Department of General Services ("DGS"), the project owner, because, according to MCG, "if MCG is somehow liable to DGS for liquidated damages, AMC is similarly liable because AMC repeatedly delayed the project." *Id.* at 5.  Notwithstanding these objections, Selective resolved AMC's claim by paying it $94,042.71—more than $42,000 less than the claim amount—and AMC in return provided Selective a "Partial Release and Agreement."  Pl.'s Facts ¶ 28.

Thereafter, AMC sued Selective in D.C. Superior Court for the balance of the payment that AMC claimed it was owed for its work on the Ward 4 project, and Selective filed a third-party complaint against all Defendants, including MCG.  *See* Pl.'s Reply to Opp'ns to Mot. for Summ. J., ECF No. 54 [hereinafter Pl.'s Reply], Ex. 3, ECF No. 54-5 [hereinafter AMC Settlement Agreement], at 1.  Ultimately, MCG agreed to pay AMC $25,000 to resolve the Superior Court lawsuit.  *See* Pl.'s Reply at 14; AMC Settlement Agreement at 1–2.

### 2.    Ecospaces, LLC

On or about February 25, 2019, Ecospaces, LLC ("Ecospaces") made a claim against the payment bond for $152,887.20 and submitted to Selective a Proof of Claim Affidavit under oath. Pl.'s Facts ¶ 29.  Selective asserts that it investigated the claim in "good faith" before making payment.  *See id.*; Panico Decl. ¶ 8.

---

[1] The court uses PDF pagination for pincites in exhibits.

MCG disputes that Selective performed a good-faith investigation into Ecospaces' claim. During Selective's inquiry, MCG urged that Ecospaces was not entitled to payment because Ecospaces had defaulted on its obligations, an allegation that MCG supported by supplying Selective with a letter it had sent to Ecospaces' bond company declaring Ecospaces in default. *See* MCG Opp'n, MCG's Response to Selective's Stmt. of Material Facts, ECF No. 52-2 [hereinafter MCG's Facts], ¶ 29; MCG's Ex. 2, at 5–6.   Additionally, MCG asserted that Ecospaces might be on the hook for $210,000 in liquidated damages assessed by DGS, and, given this potential liability, "Ecospaces is potentially liable to MCG for an amount greater than any amount MCG owes Ecospaces." *See* MCG's Ex. 2, at 6; MCG's Facts ¶ 29.   Despite these objections, Selective fully resolved Ecospaces' claim with a $152,887.20 payment on May 10, 2019. *See* Pl.'s Facts ¶ 29.

Months later, MCG's principal, Johnny Moseley, appears to have confirmed the bona fides of Ecospaces' claim.   In an email dated August 19, 2019, Johnny Moseley wrote 5th Street Partners, the prime contractor on the project.   He stated:   "Two checks you don't mention are the Selective-Hugee and Selective-Ecospace.   My advice is for you to release those checks asap.   They are the only 2 clean reimbursements to the bonding company [Selective]."   Pl.'s Reply, Ex. 5, ECF No. 54-7 [hereinafter Pl.'s Reply Ex. 5], at 2.

### 3.    *First Choice Masonry, Inc.*

On or about December 17, 2018, First Choice Masonry, Inc. ("First Choice Masonry") submitted a claim against the payment bond for $364,778.54, supported by a Proof of Claim Affidavit under oath. *See* Pl.'s Facts ¶ 30.   Selective claims that it initiated a good-faith investigation into First Choice Masonry's claim before making payment. *See id.*; Panico Decl. ¶ 8.

5

MCG again counters that Selective failed to raise certain defenses to payment. MCG informed Selective that First Choice Masonry was not entitled to payment for the full amount because the company had submitted change orders that it was not entitled to submit and that were not approved by DGS. *See* MCG's Ex. 2, at 6. Additionally, MCG asserted that it incurred additional costs due to First Choice Masonry's defective work and that First Choice Masonry would liable for any liquidated damages assessed by DGS due to that defective work. *See id.* at 6–7. MCG also claimed that Selective should have raised "the 'pay-if-paid' defense"—that is, that MCG would owe First Choice Masonry for work performed on certain change orders only if MCG was first paid by the project owner—against First Choice Masonry's claim. MCG's Facts ¶ 30.

Selective partially resolved First Choice Masonry's claim with a $92,963 payment, and First Choice Masonry in turn provided Selective a "Partial Release and Assignment." *See* Pl.'s Facts ¶ 30. First Choice Masonry then sued Selective and MCG in this court for the additional compensation that it claimed it was owed; Selective cross-claimed against MCG. Pl.'s Reply, Ex. 4, ECF No. 54-6 [hereinafter First Choice Masonry Settlement], at 1–2. The parties settled First Choice Masonry's lawsuit, with MCG agreeing to pay First Choice Masonry $102,500. *See id.* at 2; Pl.'s Reply at 14.

### 4. *Foam InSEALators of MD and VA*

On or about October 30, 2018, Foam InSEALators of MD and VA ("Foam InSEALators") initiated a claim against the payment bond for $74,616.56 and submitted a Proof of Claim Affidavit under oath. *See* Pl.'s Facts ¶ 31. Following an investigation that Selective asserts was conducted in "good faith," Selective resolved the claim by paying Foam InSEALators $9,434.44. *See id.*; Panico Decl. ¶ 8.

6

5.    *Hugee Corporation*

On or about February 19, 2019, Hugee Corporation ("Hugee") submitted a claim against the payment bond for $270,756.64 along with a Proof of Claim Affidavit under oath.  *See* Pl.'s Facts ¶ 32.  Selective again maintains that it performed a good-faith investigation into Hugee's claim.  *See id.*; Panico Decl. ¶ 8.

MCG disputes that Selective's inquiry into Hugee's claim was done in good faith, as Selective failed to investigate and assert meritorious defenses.  Before Selective paid Hugee, MCG "provided to Selective numerous defenses to the Hugee claim," including that Hugee had "submitted change orders that had not been approved," and that Hugee was "liable for back-charges for overhead work" and "back-charges related to an unapproved 'change in equipment.'" MCG's Facts ¶ 32.  In addition, MCG informed Selective that "DG[S] ha[d] not made final payment . . . for Hugee's work," and "Hugee failed to pay its vendor funds [it] had received, forcing MCG to pay."  *Id.*  MCG also informed Selective that it "was negotiating a settlement with Hugee" and "requested Selective to refrain from interfering with MCG's settlement negotiations." *Id.*

Selective nevertheless resolved Hugee's claim on July 25, 2019, for $198,588.93, and Hugee provided Selective a "Partial Release and Assignment."  Pl.'s Facts ¶ 32.  Selective paid Hugee an additional $13,773.52 on October 2, 2020.  *Id.*  As MCG tells it, before Selective made the second payment, MCG urged that no additional renumeration was required because Hugee had settled with MCG and DGS over the disputed change orders and had signed a "partial release," which meant that Hugee could not "recover almost the entire amount of the remainder of its claim" against MCG and DGS.  MCG Opp'n, Ex. 6, ECF No. 52-6 [hereinafter MCG's Ex. 6], at 23;

MCG's Facts ¶ 32.  According to MCG, this meant that the most Hugee had a right to recover was $14,749.81.  *See* MCG's Ex. 6, at 25.

On August 19, 2019—one month after the first payment and more than a year before the second—Johnny Moseley expressed his view on the bona fides of Selective's first payment. Recall, in an email to 5th Street Partners, he wrote:  "Two checks you don't mention are the Selective-Hugee and Selective-Ecospace.  My advice is for you to release those checks asap.  They are the only 2 clean reimbursements to the bonding company [Selective]."  Pl.'s Reply Ex. 5, at 2.

6.    *Tradesmen International, LLC*

Tradesmen International LLC ("Tradesmen International") submitted two separate claims against the payment bond—one for $107,702.35 on October 23, 2018,[2] and another for $18,789.21 on October 26, 2018—and subsequently submitted Proof of Claim Affidavits under oath.  *See* Pl.'s Facts ¶¶ 33–34.  Selective claims it undertook a good-faith investigation into both claims.  *See id.*; Panico Decl. ¶ 8.  MCG disagrees.  It contends that it advised Selective that Tradesmen International was not entitled to payment because it "performed work supplementing MCG's subcontractors" and such work was not covered by the bond.  MCG's Facts ¶ 34.  MCG informed Selective that Tradesmen International's "work was performed directly for HRL Contracting, LLC, a lower-tier subcontractor that did not even have a direct subcontract with MCG."  *Id.*  Over MCG's objections, Selective resolved both claims, paying Tradesmen International $107,685.35 on June 20, 2019, and $18,789.21 on June 7, 2019.  Pl.'s Facts ¶¶ 33–34.

---

[2] Although Selective's statement of facts lists October 23, 2019, as the date of Tradesmen International's first claim and Defendants do not correct this, the court assumes the parties meant the claim was initiated on October 23, 20*18*, given the timeline of events described.

7.    *Rich Moe Enterprises, LLC*

On or about March 1, 2019, Rich Moe Enterprises, LLC ("Rich Moe Enterprises") submitted a claim against the payment bond for $277,033.64 and submitted a Proof of Claim Affidavit under oath.  *See id.* ¶ 35.  Rich Moe Enterprises then initiated a lawsuit in D.C. Superior Court against MCG and Selective seeking payment on its claim.  *See id*.  Selective ultimately paid Rich Moe Enterprises $62,500 on or about September 29, 2020, and Rich Moe Enterprises dismissed the claim.  *See id.*  By letter dated September 11, 2020, Defendants acknowledged that Selective's payment to Rich Moe Enterprises was fair and reasonable.  *See id.*

8.    *Eastcoast Siding, Inc.*

On or about November 1, 2019, Eastcoast Siding, Inc. ("Eastcoast Siding") submitted an amended claim against the payment bond for $308,876.10 related to a previously submitted Proof of Claim Affidavit under oath.  *See id.* ¶ 36.  When its claim went unpaid, Eastcoast Siding initiated a lawsuit in this court against MCG and Selective seeking payment on its claims.  *See id*.  Selective then paid Eastcoast Siding $100,000 on October 27, 2020, and Eastcoast Siding dismissed the claim.  *See id.*  By letter dated September 8, 2020, Defendants acknowledged that Selective's payment to Eastcoast Siding was fair and reasonable.  *See id.*

**B.    Procedural Background**

On April 15, 2019, Selective filed a three-count Complaint for contractual indemnity, declaratory judgment, and specific performance.  *See* Compl.  That day, Selective also moved for a preliminary injunction, seeking to compel Defendants "to post adequate collateral with Selective in the amount of" $1,699,993.  Pl.'s Mot. Prelim. Inj., ECF No. 4, at 1.  Following a hearing, the court denied Selective's motion.  Order, ECF No. 17.

9

On November 13, 2019, the court consolidated this case with three other cases arising from the Ward 4 project.[3]  *See* Order, ECF No. 31, at 1.  Each of those actions has since been resolved.  *See* Stipulation of Dismissal with Prejudice of All Claims by Omni, ECF No. 41; Joint Stipulation of Dismissal with Prejudice of All Claims by First Choice Masonry, Inc., ECF No. 42; Joint Stipulation of Dismissal with Prejudice of All Claims by Rich Moe Enterprises, LLC, & Moseley Construction Group, Inc., ECF No. 49; Joint Stipulation of Dismissal with Prejudice of All Claims by Eastcoast Siding, Inc., D/B/A Eastcoast Exteriors, ECF No. 50.

On January 5, 2021, Selective filed a motion for summary judgment as to Count I "in the amount of $850,664.36 for payments Selective has made to MCG subcontractors and suppliers." Pl.'s Mot. at 1.  Selective also seeks prejudgment interest that has accrued on these payments in the amount of $55,588.96 and seeks the amount of interest that "will continue to accrue at the contractual rate of 5.25% per annum ($122.36 per day) until the entry of judgment."  *Id.* at 3. Finally, Selective seeks attorneys' fees and costs.  *Id.*

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

---

[3] The court consolidated the following cases with this matter: (1) *Rich Moe Enterprises, LLC v. Selective Insurance Co. of America*, 1:19-cv-00371-EGS; (2) *Omni Excavators, Inc. v. Selective Insurance Co. of America*, No. 1:19-cv-02873-EGS; and (3) *First Choice Masonry, Inc. v. Moseley Construction Group, Inc.*, No. 1:19-cv-02713-EGS. Order, ECF No. 31, at 1.  On April 22, 2020, a fourth subcontractor's claim was consolidated with this case.  Minute Order, *Eastcoast Siding, Inc. v. Selective Ins. Co. of Am.*, No. 1:19-cv-03303-APM (D.D.C. Apr. 22, 2020).

In deciding a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor.   *Elzeneiny*, 125 F. Supp. 3d at 28 (citing Fed. R. Civ. P. 56(e)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## IV.   DISCUSSION

Selective seeks to enforce the Indemnity Agreement against Defendants by requiring them "to indemnify Selective for losses incurred by Selective as a result of having issued surety bonds on behalf of MCG for a construction project."   Pl.'s Mot. at 1.   But not all parties agree that the Indemnity Agreement is enforceable.   MCG concedes the validity of the contract, but Johnny Moseley and Alisa Moseley assert that "it is procedurally and substantively unconscionable to enforce it against them."   Johnny Moseley & Alisa Moseley's Opp'n to Pl. Selective's Mot. for Summ. J, ECF No. 53 [hereinafter Moseleys' Opp'n], at 4.   The court takes up this defense first, and then turns to Defendants' common contention that "genuine disputes of material fact exist regarding Selective's settlement of the claims" because Selective "settled claims over MCG's objections and despite viable defenses Selective was entitled to assert in good faith to avoid payment."[4]   MCG Opp'n at 5.

---

[4] The Moseleys "refer to and incorporate by reference all arguments made by [MCG] as to the reasonableness of the amounts Selective paid claimants and the reasonableness of Selective's sought attorneys' fees, costs and expenses that are raised in MCG's Opposition to Selective's Motion."   Moseleys' Opp'n at 4 n.1.

11

### A.     Unconscionability

Indemnity agreements, like the one at issue here, have long been recognized as valid and enforceable under District of Columbia law.[5]  *See Carroll v. Nat'l Surety Co.*, 24 F.2d 268, 270 (D.C. Cir. 1928) (explaining agreements pursuant to which a surety may pay settlements based on a verified statement of the surety's officers "are not unreasonable, nor against public policy, and do not vitiate the indemnity contract").  The Moseleys, however, argue that "the Indemnity Agreement is unconscionable as Selective seeks to enforce it against" them.  Moseleys' Opp'n at 8.  Specifically, the Moseleys contend that they were not "sophisticated enough" to "be on level playing ground with Selective," and that "the terms of the personal guaranty and Indemnity Agreement are commercially unreasonable as applied to" them.  *Id.* at 9–10.  Selective counters that the Moseleys have waived their unconscionability argument because unconscionability is an affirmative defense that must be raised in the first responsive pleading, and the Moseleys never asserted unconscionability in their Answer.  *See* Pl.'s Reply at 7.  In the alternative, Selective contends that the "Moseleys have not presented evidence or authority indicating that the Indemnity Agreement is unconscionable."  *Id.* at 8.  The court agrees with Selective on both of its arguments.

Unconscionability is "generally applied as an affirmative defense."  *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 555 (D.C. 2016).  "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c)(1).  "It is well-settled that a party's failure to plead an affirmative defense generally results in the waiver of that defense and its exclusion from the case."  *Kapche v. Holder*, 677 F.3d 454, 465 (D.C. Cir. 2012) (cleaned up).  While "some circuits permit parties to raise affirmative defenses for the first time in

---

[5] The Indemnity Agreement lacks a choice-of-law provision, but the parties agree that District of Columbia law governs.  *See* MCG Opp'n at 5 n.3; Moseleys' Opp'n at 12 n.8.  The court therefore applies District of Columbia law to the Indemnity Agreement.

dispositive motions where no prejudice is shown," the D.C. Circuit has departed from those courts and held that "a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." *Harris v. Sec'y, U.S. Dep't of Veterans Affs.*, 126 F.3d 339, 344–45 (D.C. Cir. 1997); *see also Kelly v. Richard Wright Pub. Charter Sch.*, 317 F. Supp. 3d 564, 566 (D.D.C. 2018).

Here, the Moseleys did not raise unconscionability as an affirmative defense in their Answer. *See* Johnny Moseley & Alisa Moseley's Answer to Compl., ECF No. 15 [hereinafter Moseleys' Answer], at 5–6; Johnny Moseley & Alisa Moseley's Answer to Cross-Cl., ECF No. 38 [hereinafter Moseleys' Answer to Cross-Cl.], at 4–5. While their Answer does "reserve the right to assert any affirmative defenses learned as a result of discovery in this matter," Moseleys' Answer at 6; Moseleys' Answer to Cross-Cl. at 5, the Moseleys never later sought to amend their Answer to add unconscionability as a defense, nor have they argued on summary judgment that such defense became available only as a result of investigation or discovery. Because the Moseleys failed to plead unconscionability as an affirmative defense, they cannot "raise [it] in a dispositive motion," and the defense is waived. *Harris*, 126 F.3d at 345.

Even if the court were to consider the Moseleys' unconscionability defense on the merits, it fails. First, District of Columbia law is well-settled that "[w]here a surety, without constraint or deception, executes a bond guaranteeing the performance of a contract by his principal, and thereby secures the benefits intended by it for the principal, and a breach occurs, it is then too late to raise the question of the validity of the principal's contract." *Carroll*, 24 F.2d at 270. Because Selective has paid claims on the bond, it is simply too late for the Moseleys to now claim for the first time that the Indemnity Agreement is unconscionable.

13

Second, the Moseleys have not offered any facts to demonstrate that the Indemnity Agreement is unconscionable as to them.  For a court to find a contract unconscionable, the party seeking to avoid the contract must demonstrate that the contract is both procedurally and substantively unconscionable. *See Urb. Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983).  That is, the party must prove that there was "'an absence of meaningful choice on the part of one of the parties'" (procedural unconscionability) and that the contract's terms "'are unreasonably favorable to the other party'" (substantive unconscionability).  *Id.* (footnote omitted) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)).  Only in "an egregious situation" may "one or the other . . . suffice."  *Id.* (internal quotation marks omitted).  Moreover, "there do not appear to be any reported District of Columbia cases finding such an 'egregious' scenario."  *Bradley v. NCAA*, 464 F. Supp. 3d 273, 294 (D.D.C. 2020) (cleaned up).

The Moseleys argue the Indemnity Agreement was procedurally unconscionable because Selective, "a national insurance company," was "requiring personal guarantees from two individuals," and the Moseleys "were faced with the prospect, in the middle of a very large construction project, of signing the guarantees and MCG obtaining the bond, or refusing to sign and MCG being denied a bond."  Moseleys' Opp'n at 9.  This dilemma does not rise to the level of the "absence of meaningful choice."  *Urb. Invs.*, 464 A.2d at 99 (internal quotation marks omitted).  The Moseleys have raised no evidence that they "attempted to bargain for different terms," or that "the contract involved a necessary service" that would have placed undue pressure on the Moseleys to enter the contract.  *Moore v. Waller*, 930 A.2d 176, 182 (D.C. 2007)*.*  Without anything in the record to indicate that the Moseleys had "no meaningful choice" but to enter the Indemnity Agreement, the court cannot agree that the Agreement is procedurally unconscionable.

14

There is likewise no reason to conclude the Indemnity Agreement was substantively unconscionable. The "proper focus" for substantive unconscionability "is the commercial setting, purpose, and effect of the contract." *Urb. Invs.*, 464 A.2d at 101 (financing arrangement for real estate sale was not "unreasonable in light of the business circumstances at the time the contract was executed"). In that context, the Moseleys must show that "the contract terms were unreasonably advantageous" to Selective such that the contract "affronts the [court's] sense of decency." *Id.* at 100 (internal quotation marks omitted). That is, they must show that the Indemnity Agreement was one "'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 95 (D.D.C. 2012) (quoting *Hume v. United States*, 132 U.S. 406, 411 (1889)). Importantly, "a court cannot strike down a contract simply because the vicissitudes of time proved it to be a 'bad' bargain for one of the parties." *RFB Props. II, LLC v. Deutsche Bank Tr. Co. Ams.*, 247 A.3d 689, 697 (D.C. 2021) (internal quotation marks omitted).

The Moseleys contend that because the Indemnity Agreement requires them to "post collateral of over $1.6 million on Selective's demand," and to "deposit things like real property, bank accounts, [and] vehicles," the agreement was one sided. Moseleys' Opp'n at 10 (internal quotation marks omitted). But given the large sum for which Selective issued the bonds, such terms were not unconscionable. Selective issued payment and performance bonds that each "have a penal sum of $12,300,000." Pl.'s Facts ¶ 15. The Moseleys' promise to indemnify Selective and post significant collateral therefore comports with the "commercial setting, purpose, and effect of the contract." *See Urban Invs.*, 464 A.2d at 101; *see also Carroll*, 24 F.2d at 270 (noting it is the indemnitor's "assurance which induces the surety to become liable upon the principal's bond").

15

Moreover, the Moseleys have not presented any evidence that the Indemnity Agreement's terms deviate from industry norms. The absence of any such evidence is fatal to their defense.

Accordingly, the court holds that the Indemnity Agreement is not unconscionable and is enforceable against the Moseleys.

### B.  Good Faith

The court next turns to the question of whether Selective's "exercise of discretion to pay claims was reasonable or in good faith." MCG Opp'n at 7. Defendants argue that the Indemnity Agreement contains an implied duty of good faith and fair dealing and that Selective breached that duty by unnecessarily paying claims to which Selective had viable defenses. *See* MCG Opp'n at 5. Selective disagrees, arguing that it "paid the[] claims following a reasonable investigation thereof, and a determination by Selective that it was obligated to make such payments pursuant to the Payment Bond and/or that resolution of the claim was reasonable and appropriate given the circumstances." Pl.'s Mot., Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 51-1 [hereinafter Pl.'s Mem.], at 7.

The court first addresses the appropriate standard by which to judge Selective's settlement of claims and then evaluates the disputed settlements with each of the Claimants.

#### 1.  Good Faith Standard

The Indemnity Agreement provides that the "Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and Surety's decision thereon shall be final and binding upon the Indemnitors." Indemnity Agreement ¶ 7. Unlike indemnity agreements at issue in other cases, this Agreement, at least on its face, does not restrict Selective's right to reimbursement to those payments made in "good faith" or otherwise limit Selective's discretion to settle claims. *Cf. Ideal Elec. Sec. Co. v. Int'l*

*Fidelity Ins.*, 129 F.3d 143, 148 (D.C. Cir. 1997) (involving indemnity agreement that provided "the Surety shall be entitled to charge for any and all disbursements made by it in good faith" (internal quotation marks omitted)); *Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 n.5 (4th Cir. 1983) (involving indemnity agreement that provided the "[s]urety shall be entitled to charge for any and all disbursements made by it in good faith" (internal quotation marks omitted)).

Selective does not, however, assert that the Indemnity Agreement grants it an unconditional right to settle claims. Instead, it takes the position that "[t]he only exception to a surety's right to pay claims and seek indemnity . . . is when such claims are made 'through fraud or lack of good faith' on the part of the surety." Pl.'s Mem. at 14 (quoting *Bristol Steel*, 722 F.2d at 1163). So, Selective contends, it is entitled to indemnity absent a showing of "bad faith or fraud," Pl.'s Reply at 10, and the burden of making such showing rests on Defendants, Pl.'s Mem. at 15.

Defendants, on the other hand, take a more expansive view of a surety's obligation to its indemnitors. They contend that the implied covenant of good faith imposes upon a surety the duty to act reasonably in the settlement of claims. *See* MCG Opp'n at 7 (citing *Neustrom v. Union Pac. R. Co.*, 156 F.3d 1057, 1068 (10th Cir. 1998) (stating that "a duty to act reasonably and in good faith must be read into every contract, including the terms of indemnification clauses"); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Wadsworth Golf Constr. Co. of Midwest*, 863 A.2d 347, 354 (Md. Ct. Spec. App. 2004) (in surety arrangement, "the reasonable expectations of all the parties must be effectuated and the surety must act in a reasonable manner in handling or paying claims" (internal quotation marks omitted))). Unreasonably settled claims, Defendants contend, need not be indemnified. *See id.* A claim is not reasonably settled if, for example, the surely fails to adequately investigate it. *See id.* at 8. Defendants concede, however, that they bear the burden

of showing unreasonableness.   "Clause 3" of the Indemnification Agreement, they admit, "transfers the burden to MCG and the Moseleys to prove Selective's claimed costs were unreasonable."   MCG Opp'n at 23; Indemnity Agreement ¶ 3 ("Indemnitors agree that the vouchers or other evidence of such payments sworn to by a duly authorized representative of Surety shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety."); *Ideal Elec.*, 129 F.3d at 151 (holding that a similar "prima facie evidence" clause "shifts to [the indemnitors] the burden of proving that the fees claimed are excessive").

The parties' different positions reflect a jurisdictional division on what constitutes "good faith" by an indemnitor.   "[S]ome courts require the surety to have acted in a 'reasonable' manner in handling or paying claims.  A somewhat more lenient standard is that the surety acted in good faith or with proper motive."  Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 10:107 (footnote omitted).   Under the latter, more favorable standard to sureties, a surety is denied indemnity only upon a showing of bad faith, which requires a demonstration of "an 'improper motive' or 'dishonest purpose'" on the part of the surety.  *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 838 A.2d 135, 152 (Conn. 2004); *see also Fireman's Ins. of Newark v. Todesca Equip. Co.*, 310 F.3d 32, 37 (1st Cir. 2002) (holding that indemnitors were "required to allege and prove fraud or collusion in order to avoid repayment of the claim paid by [surety]" and applying Massachusetts law).   The less favorable standard to sureties provides that "the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive."  *Arntz Contracting Co. v. St. Paul Fire & Marine Ins.*, 54 Cal. Rptr. 2d 888, 899 (Ct. App. 1996) (internal quotation marks omitted); *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 473 (Md. 2004) (holding "that a standard of reasonableness also should be implied in the good faith analysis of a surety's actions

18

in determining whether it may recover against the principal" and rejecting a standard of the surety's performance measured by "whether fraud was present").

The D.C. Court of Appeals has not addressed which of these two standards apply.   District of Columbia courts have referred to good faith in general terms in the context of the implied covenant of good faith and fair dealing, finding the covenant is breached "[i]f the party to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (internal quotation marks omitted).   But the court has found no case, and the parties have cited none, in which the standard of good faith has been applied under District of Columbia law to the disputed settlement of a claim by a surety pursuant to an indemnity agreement.

In the absence of controlling District of Columbia authority, courts "may look to Maryland common law for guidance since the District of Columbia derives its common law from Maryland as of 1801." *Solid Rock Church, Disciples of Christ v. Friendship Pub. Charter Sch., Inc.*, 925 A.2d 554, 561 (D.C. 2007) (internal quotation marks omitted).   The Maryland Court of Appeals has addressed this precise issue.   In *Atlantic Contracting & Material Co. v. Ulico Casualty Co.*, Maryland's highest court held that "the good faith standard allows the surety a discretion limited by the bounds of reasonableness, rather than by the bounds of fraud." 844 A.2d at 473–74.   Under this standard, "if a surety unreasonably pays for an obligee's work that is not covered under a payment bond, then the surety should not be entitled to indemnification from the principal." *Id.* at 475.   The *Atlantic Contracting* court decided whether the surety performed its obligations reasonably by looking to: (1) "the obligations of the surety as provided by the terms and coverage of the bond"; (2) "whether the principal has made more than generalized demands that the surety deny the claim"; (3) "the cooperation, or lack thereof, by the principal, in dealing with the surety";

19

and (4) "the thoroughness of the investigation performed by the surety."  *Id.* at 474 (citations omitted).

With no controlling authority under District of Columbia law on the scope of a surety's good-faith duty, the court applies *Atlantic Contracting*'s "reasonableness" standard to determine whether Selective must be indemnified for the payments it made to MCG's claimants.

   2. *Payments to Claimants*

    a. <u>FoamInSEALators, Rich Moe Enterprises, and Eastcoast Siding</u>

Amounts paid to three claimants are disposed of easily.  Defendants do not dispute that Selective reasonably paid claims from FoamInSEALators, Rich Moe Enterprises, and Eastcoast Siding.  *See* MCG Opp'n at 13, 17.  Accordingly, the court grants summary judgment to Selective on those claims.

    b. <u>AMC and First Choice Masonry</u>

Next, Selective made payments to AMC and First Choice Masonry for less than the amounts each claimed.  *See* Pl.'s Facts ¶¶ 28, 30.  Defendants nevertheless argue that Selective did not act reasonably in making these partial payments because it failed to raise certain defenses.  *See* MCG Opp'n at 8–13.  Specifically, Defendants told Selective that AMC "was a constant source of delay," submitted "numerous invoices that were unsupported and inflated," and "caused significant damage to the Project's roof" for which it is responsible for the cost of repair.  MCG's Ex. 2, at 4.  MCG also asserted that AMC was potentially liable for liquidated damages that may be assessed by the project owner.  *Id.* at 5.  Thus, according to Defendants, Selective's "decision to pay the AMC claim . . . presents a textbook scenario of genuine disputes of fact."  MCG Opp'n at 9.

Defendants similarly "disagreed with Selective's stated intent to pay First Choice and provided numerous reasons in support," including "pay-if-paid" clauses in MCG's subcontract with First Choice Masonry, *see* MCG Opp'n, Ex. 4, ECF No. 52-4, at 3 ("Payment on account of *pending changes* made by the Owner shall be made *only if* Moseley receives such payment from the Owner for Subcontractor's changed work."); MCG incurred additional costs due to First Choice Masonry's defective work; and First Choice Masonry was liable for liquidated damages assessed by DGS.  MCG Opp'n at 11–13; MCG's Ex. 2, at 6–7.

These contentions ring hollow, even under *Atlantic Contracting*'s more forgiving reasonableness standard.  Defendants do not dispute that the bonds issued by Selective obligated it "to pay for labor, materials, and equipment furnished for use in the performance of the Construction Contract," Pl.'s Mot., Ex. H, ECF No. 51-13 [hereinafter Payment Bond], at 7, § 1. *See Atl. Contracting*. 844 A.2d at 474 (considering "the obligations of the surety as provided by the terms and coverage of the bond").  Although Defendants made more than "generalized demands" that Selective deny AMC's and First Choice Masonry's claims, *id.*, they do not offer adequate support for the defenses they advanced.  The record reflects that Defendants communicated the defenses to Selective, but, beyond Defendants' own conclusions that AMC and First Choice Masonry provided defective work that delayed the project, they have not presented facts showing that this is true.  *See* MCG's Ex. 2.

Even if Defendants had come forward with sufficient factual support, their settlement of lawsuits brought by AMC and First Choice Masonry undermine the validity of their defenses. Selective paid AMC $94,042.71, and MCG paid AMC an additional $25,000 in a separate settlement.  *See* Pl.'s Facts ¶ 28; AMC Settlement Agreement at 3.  Similarly, Selective paid $92,963 to First Choice Masonry, and MCG paid an additional $102,500 in its settlement.  *See*

Pl.'s Facts ¶ 30; First Choice Masonry Settlement Agreement at 3.  No reasonable juror could find that Selective acted unreasonably by paying AMC and First Choice Masonry when Defendants did the very same.

Finally, although Defendants complain about the "thoroughness of the investigation performed" by Selective, *Atl. Contracting*, 844 A.2d at 474—arguing that Selective offers no details about its investigation, only a conclusory declaration asserting that Selective investigated in "good faith," *see* MCG Opp'n at 8—it is Defendants' burden to demonstrate that Selective's investigation was inadequate.  Yet, Defendants have supplied no evidence that would cause the court to question the adequacy of Selective's investigation of AMC's and First Choice Masonry's claims.

The court therefore grants Selective summary judgment on its claims related to AMC and First Choice Masonry.

c.    Tradesmen International LLC

Defendants argue that Selective's payments to Tradesmen International were unreasonable because Tradesmen International's "work was performed directly for HRL Contracting, LLC, a lower-tier subcontractor that did not even have a direct subcontract with MCG."  MCG Opp'n at 16.  Because Tradesmen International "didn't work for Moseley for this claim," Defendants maintain, Selective "paid something that MCG didn't owe."  *Id.* (cleaned up).  The court disagrees.

*Atlantic Contracting* instructs the court to consider "the obligations of the surety as provided by the terms and coverage of the bond," 844 A.2d at 474, and here, there can be no question that Tradesmen International was covered by the bond's terms.  The payment bond defines a claimant as "[a]n individual or entity having a direct contract with [MCG] *or with a subcontractor of [MCG]* to furnish labor, material or equipment for use in the performance of the"

22

contract.  Payment Bond at 8, § 16.2 (emphasis added).  Defendants do not dispute that Tradesmen International "furnished materials and/or labor at the request of HRL Contracting, a subcontractor under contract with [MCG], for use and the improvement construction of [the project]."  MCG Opp'n, Ex. 7, ECF No. 52-7, at 57.  Tradesmen International thus fits within the definition of a claimant under the payment bond.  It therefore was entitled to bring claims against the bond.

Defendants raise no other argument regarding's Selective's decision to pay Tradesmen International.  The court therefore grants summary judgment to Selective for those claims.

d.    <u>Ecospaces and Hugee</u>

Finally, Defendants argue that Selective unreasonably paid the Ecospaces claim despite knowing that MCG sent a letter to Ecospaces' bond company declaring Ecospaces in default and that MCG believed Ecospaces was liable for liquidated damages.  *See* MCG's Facts ¶ 29. Similarly, Defendants argue that Selective paid Hugee despite knowing that MCG had defenses to Hugee's claim.  *See id.* ¶ 32.  These defenses included that Hugee had submitted change orders that were not approved by MCG or DGS, that Hugee was "responsible for any liability ultimately assessed by DGS," that "Hugee was liable for back-charges for overhead work" and for charges "related to an unapproved 'change in equipment' by Hugee that resulted in additional framing and drywall work," that Hugee was "not entitled to payment under the 'pay-if-paid' clauses," and that Hugee had "failed to pay one of it vendors."  *Id.*; MCG Opp'n at 14.  Additionally, Defendants claim that Selective interfered with negotiations taking place between MCG, DGS, and Hugee and then paid Hugee on its claims despite the fact that MCG and DGS's negotiations with Hugee had resulted in a settlement agreement whereby Hugee conceded that it was not owed compensation for most of its claim.  *See* MCG's Ex. 6, at 23, 25; MCG's Facts ¶ 32.

23

The court finds the question of whether Selective acted reasonably in paying Ecospaces' and Hugee's claims a closer call. As noted, Selective's obligation to pay under the Payment Bond is not in dispute. *See Atl. Contracting*, 844 A.2d at 474. On the other hand, Selective does not assert that Defendants did not cooperate with the surety; Defendants made more than "generalized demands" that Selective deny these claims; and the record reflects uncertainty as to the extent Selective considered those demands. *See id.* For example, a Selective representative, Gerald Carooza, testified that he "[did not] know" if Selective had a legal or factual basis to dispute whether Ecospaces had defaulted under its subcontract, as MCG had alleged, before paying the Ecospaces claim in full. MCG Opp'n, Ex. 3, ECF No. 52-3, at 82. Similarly, the record reveals extensive correspondence about the Hugee claim, *see* MCG's Ex. 6, without a clear explanation for why Selective rejected the defenses advanced as to that claim.

Selective's sole response to these contentions is to point to the email that Johnny Moseley sent on August 19, 2019, in which he "urged 5th Street Partners [the prime contractor] to pay [both Ecospaces and Hugee] from contract funds because they were owed." Pl.'s Reply at 15; *see* Pl.'s Reply Ex. 5 at 2. Recall, in the email Johnny Moseley described the claims from Ecospaces and Hugee as "the only 2 clean reimbursements to the bonding company" and told 5th Street Partners that he "recommend[ed] releasing those 2 asap but it[']s on you if they are not released." Pl.'s Reply Ex. 5, at 2. The court, however, finds Johnny Moseley's email statement to be ambiguous. Neither the context nor the basis for his statement that the Ecospaces and Hugee claims are "clean" is explained. And, unlike MCG's settlements with AMC and First Choice Masonry, it is not at all evident that Johnny Moseley in the August 19 email was forfeiting defenses. In short, faced with competing facts, the court cannot say as a matter of law that Selective's payments to Ecospaces

24

and Hugee were reasonable.  Accordingly, summary judgment is not appropriate with respect to those claims.

### C.     Alternative Claims for Relief

In addition to its breach of contract claim, Selective's Complaint also advances claims for a declaratory judgment that it is entitled to *quia timet* and for specific performance, *see* Compl.; Selective also seeks contractual and common law indemnity against MCG in a cross-claim, *see* Cross-Cl., ECF No. 35.  While Selective mentions these claims in its briefing, it has not actually moved for summary judgment on these claims and has conceded that a judgment in its favor would render such claims moot.  *See* Pl.'s Mem at 15–16.  Accordingly, to the extent the court enters summary judgment in Selective's favor, its ancillary claims are moot.  Moreover, because Selective does not seek summary judgment on its additional claims, the court does not reach them at this juncture.

### D.     Attorneys' Fees

Finally, Selective argues that it is "is entitled to the recovery of its fees and expenses."  *Id.* at 19.  "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A).[6]  Such a motion must "be filed no later than 14 days *after* the entry of judgment."  *Id.* 54(d)(2)(B)(i) (emphasis added); *see also* L. Civ. R. 54.2(a) ("In any case in which a party may be entitled to an attorney's fee from another party, the Court may, at the time of entry of final judgment, enter an order directing the parties to confer and to attempt to reach agreement on fee issues.").  Because the court does not enter final judgment in Selective's favor, it denies

---

[6] Neither side argues that Selective would have to prove attorney's fees "as an element of damages" at trial. Accordingly, the court treats the fees request as one appropriately considered after the entry of judgment.

Selective's request for attorneys' fees without prejudice to renewal upon the entry of final judgment.

## V.        CONCLUSION

For the foregoing reasons, the court grants Selective's motion for summary judgment with respect to Selective's payments to AMC, First Choice Masonry, Foam InSEALators, Tradesmen International, Rich Moe Enterprises, and Eastcoast Siding.  The court denies Selective's motion for summary judgment with respect to Selective's payments to Ecospaces and Hugee.

The parties shall appear via videoconference for a status conference on August 12, 2021, at 10:00 a.m., to discuss a schedule for further proceedings in this matter.

Dated:  July 30, 2021

Amit P. Mehta
United States District Court Judge